No. ——.
First Circuit Appeal.

JOE BATON v. HAMMOND LUMBER COMPANY, LTD.

(June 12, 1925, Opinion and Decree.)
(June 30, 1925, Rehearing Refused.)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Negligence—Par. 25.
Where one who had been in the employ of a lumber company but was not acting in the course of his employment at the time of the accident, was injured by logs falling on him after he had attempted to force himself onto a lumber train against the orders of the brakeman, he is contributorily negligent and not entitled to damages.

2. Louisiana Digest—Railroads—Par. 54, 55.
Where one attempts to force himself onto a lumber train against the orders of the brakeman and against the rules of the company, he is similar to a trespasser, even though he was an employee of the company and allowed certain privileges around the camp and the commissary of the company; and therefore, the company is not liable for damages resulting from the accident which followed.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Judicial District Court of Louisiana, Parish of Livingston, Hon. Columbus Reid, Judge.

This is a suit for damages for personal injuries caused by the falling of logs from a log train.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

W. A. Benton, of Baton Rouge, attorney for plaintiff, appellant.

S. S. Reid, of Amite, attorney for defendant, appellee.

MOUTON, J. Plaintiff received serious injuries from a log which fell on him from a train of defendant company on the 2nd day of April, 1923. He sues defendant for $10,000.00 based upon various items of damages declared upon in his petition. His demand was rejected.

The accident occurred in the morning alongside the track of a logging road of defendant company. Plaintiff had been in the employ of defendant for some time prior to the occurrence, but on the day of the accident was not in the employ of the company, as it is by him alleged. On the day he was injured, had gone to the commissary department of the company to buy a few articles he needed. In company with one, Simly Hughes, he went to the house of Mattie Hughes which was situated a short distance from the track of this logging road. He had gone there with his companion on a friendly visit. There was a large camp of railroad laborers there or in that vicinity. Plaintiff had been many

'years an employee of the company and obviously there was no objection to his presence at the camp or the commissary. He certainly had not gone there in the discharge of the duties as an employee on that day, nor at the invitation of the company. His presence at the Mattie Hughes' house, as far as the record shows, was not known to the defendant. Clearly, he was not an invitee.

The log train had stopped about opposite the Mattie Hughes' house to take some water. Plaintiff and his companion, Simly, who were in the house at that time, proceeded to walk towards the train. Simly was in the lead. He says, he got next to the train, so close he could have put "his hand on it;" that he looked back, saw plaintiff as near to the train as he was, coming towards him, walking fast, and "right by the train." He says that the train started to move and that he walked back from the track as he knew it was dangerous to be that close to a train when moving. He says, he then hollered to plaintiff to "look out," and that instead of plaintiff running back from the track, he ran in the same direction the train was going. He explains that there was only a little mud on the side of the track where they were standing which plaintiff could have easily jumped if he had attempted to get away from the train. Plaintiff admits in his testimony that Simly hollered at him to "look out". In this respect these witnesses agree. There can be no doubt that plaintiff remained in dangerous proximity to this moving train, because if he had stepped aside which he could have easily done, he would have escaped injury as was the case with Simly, his companion.

Anthony Magee, the brakeman on the log train in question, says, plaintiff came up close to the train which had started after taking water, and made a motion or attempt to catch it as it was moving on. He says, he told him to get back, that he stepped aside about one foot, still remaining close to the car. Magee explains he was then on the ground taking water, and was at a distance of about five feet from plaintiff. He says, after plaintiff had thus stepped aside, he again tried to catch on to another car of that train, and this, after he had warned him from the top of the car, not to attempt it. He testified, that "time and again" prior thereto, he had told plaintiff that it was against the rules of the company to ride on log trains, with the exception of those of the crew employed to operate trains of that character. Jenks, manager of the log department of the company says that such are the rules of the company. Plaintiff unquestionably knew these rules existed when he thus tried to board the train. The proof shows besides, that for five years prior to the accident he had been working on logging trains as a member of the steel gang. He admits that he had seen where a log had fallen alongside of the track, but disclaims that he knew there was any danger of logs falling from such trains, and causing damage to persons that might be walking along railroad tracks. In his rebuttal testimony, he says, however, that he was trying to get where Simly, his companion, was, because he did not know what would happen, and he was afraid the log would roll over him. It is therefore plain that plaintiff, when hurt, was acting in direct violation of the rules of the company, and also with full knowledge of the danger and risks incidental to the position in which he placed himself at the time of the accident. Plaintiff said that the logs on that train had not been properly tied or chained, as the rules of prudence and safety required. Defendant made a strenuous effort to prove that they were not. If that be true, as plaintiff was aware thereof, the greater became his negligence, in thus attempting to board that train under such a perilous situation. In the case of Walker

vs. Nona Mills Co., 151 La. 738, 92 South. 318, it appears that the plaintiff was killed by a log falling on him from a conveyor while he was passing under it in a cart in which he was carrying slabs from a pile on the premises of a sawmill company. The court found he had worked at and about the conveyor for many years and had full knowledge of the danger of logs falling therefrom. The court said the danger was or should have been obvious to him because logs which were laying around could have fallen there only from the conveyor. Here, plaintiff knew of the danger as appears from his own testimony, and which from his long service as an employee of the company he was obviously bound to know. In addition to this, he had been warned of the danger when he was repeatedly told that riding on these log cars was against the rules of the company, and also when at the very moment of the accident, and a little while before, he was ordered by the brakeman to step back, and not to get on the car. Counsel for plaintiff refers us to the case of Price vs. Lee Lumber Company, 125 La. 888, 51 South. 1025. In that case the evidence showed that plaintiff had had experience in the logging business for more than three years, and had been employed in arranging logs loaded on a logging car. It was shown in that case that a log had rolled off the car and falling on plaintiff inflicted injuries for which he brought suit in damages. The court found that the danger to be apprehended from the accidental rolling off of the logs was as apparent to him as to any one else, and dismissed his action. Here, the danger was not only apparent to plaintiff but he had furthermore been warned thereof prior to the day of the accident, and actually on that very occasion. There are therefore stronger reasons for the dismissal of this claim than appeared in the case just above quoted. Counsel for plaintiff cites Strickland vs.

Louisiana Ry. & Navigation Co., 134 La. 238, 63 South. 888. In the case a railroad company had given the use of its track for the operation of the logging trains of a lumber company. The court held that the employees of the lumber company were not trespassers on the property of the railroad company; that it was negligence for the railroad company to allow its cars to stand on its tracks at night without any lights to warn or any one to give notice to any train of the lumber company which might be using the tracks, and if for failure to give the proper warning, an employee of the lumber company was injured, the railroad company was liable. Obviously, the defendant company here was in no sense a trespasser, and was responsible for no act towards plaintiff, that could bring it within the rule announced in that case. In the Nona Mills suit, 151 La. 738, 92 South. 318, very similar to this case in most of its essential particulars, the court said that plaintiff's husband was a mere licensee. At most that is what plaintiff is in this case. In reality, his conduct in attempting to force himself on the train against the orders of the brakeman makes him appear more in the light of a trespasser than of a licensee. He is not entitled to damages as was held by the district judge.